IN THE

# DISTRICT COURT

FOR THE

# CITY AND COUNTY OF PHILADELPHIA.

1837.

## MURPHY v. MORRIS.

January 14, 1837.

*Rule to show cause why the defendant should not produce a paper in his possession.*

Where the defendant has in his possession a paper or document, the inspection of which is necessary to enable the plaintiff to declare, the court will grant a rule on the defendant to produce the same in open court for that purpose.

IN this case, the rule to show cause prayed for in the petition of the plaintiff, was granted. The facts stated in the petition were verified by the affidavit of the plaintiff. The petition set forth, " that he hath brought suit in this court upon an agreement entered into by Richard Morris, the defendant in said suit, and George McClellan of the one part, and your petitioner of the other part—by virtue whereof, Richard Morris, the defendant, is indebted to him in the sum of $1800—or such part thereof as may remain unpaid. That the said agreement was reduced to writing and executed by your petitioner—but no copy or duplicate thereof was given to him, and he believes that the original agreement still remains in the custody and possession of the said

[Murphy v. Morris.]

Richard Morris. That he is instructed by his counsel, that an inspection of that instrument is necessary to enable him to declare. He therefore prays, that your Honours will grant him a rule upon the said Richard Morris, to produce in court here upon Saturday next, (or then show cause to the contrary), that certain agreement entered into by your petitioner with him, the said Richard Morris, and George McClellan, in regard to the sale of, and ground-rent upon, six certain lots in McDuffy Street, in the city of Philadelphia, believed to have been executed in the spring or summer of 1834."

No counter affidavit, denying the facts above alleged, was presented on the part of the defendant.

On the hearing of the rule,

*Clarkson*, for the defendant, appeared to show cause. He argued: 1. The power in the court to make this rule has never heretofore been asserted or exercised in this state. When exercised in England, it is merely to save the expense of chancery proceedings. 4 *E. C. L. R.* 44; Cooke *v.* Tarswell, 8 *Taunt.* 131; 1 *Tidd's Prac.* 434; 3 *Chitty's Prac.* 432. 2. The acts of assembly give to the party a right to proceed by bill of discovery, which being a statutory remedy, is the only one which can be pursued in cases like the present, and which the courts are competent to afford. Act of 21st March, 1806, s. 13. (*Stroud's Purd· Dig.* 51.)

*S. G. T. Campbell*, contra; cited *Barnes* 236; Bateman *v.* Phillips, 4 *Taunt.* 157; 1 *E. C. L. R.* 282, 391; Morrow *v.* Saunders, 5 *E. C. L. R.* 94; 11 *Johns. R.* 245; 19 *Johns. R.* 268; 9 *Wendel* 458: 3 *Penna. R.* 139; Princess of Wales *v.* Lord Liverpool, 1 *Swanston R.* 118.

The opinion of the court was delivered by

STROUD, J.—The plaintiff states in his petition that the instrument of writing, of which he seeks an inspection, was executed by him, and that without retaining a copy, he delivered it to the defendant, in whose possession he believes it now is. He avers also, that it is the foundation of the action which he has brought, and that an inspection of it is necessary in order to enable him to declare accurately. His petition is verified by his oath, and not

[Murphy v. Morris.]

having been denied by the defendant, the facts which it avers, are to be taken as true.

An application of this kind is admitted to be a novelty in our courts, and on this account, and on another ground to be noticed hereafter, the defendant questions the right by which he is called upon to answer.

The power of the court, on general principles of common law, to entertain this application, is the first inquiry.

I have already remarked that the application is new. This circumstance is justly calculated to produce hesitation; for the power is demonstrably very convenient, if not essential, to the administration of justice, and its exercise has been long known in the British courts of law, as well as in those of some of our sister states with whose decisions we are very familiar.

The practice of compelling the production of papers for inspection is incidently noticed in Jevens *v.* Harridge, 1 *Saunders' Rep.* 9, and is there said to be " from the favour of the court, and not of right." And in Hill *v.* Aland, 1 *Salk.* 215, the court refused to make a rule absolute to furnish a copy of a note, because the contract upon which the action was founded, was a parol contract, of which the note was only *evidence.* This denial was manifestly in reference to the doctrine of *oyer*, which is confined (with the exception, perhaps, of a patent) to a sealed instrument declared upon, and upon which a *profert* is necessary. Lord Mansfield, however, laid it down as a general rule, that wherever the defendant would be entitled to a discovery in equity, he should have an inspection at common law. Barry *v.* Alexander, cited in 1 *Tidd's Pr.* 641. But the prevailing doctrine of the present day is much more restricted. It is thus stated, by Chief Justice Tindal, in Jessel *v.* Milligan, 28 *E. C. L. R.* 272: " Inspection of documents in the custody of an adversary is only permitted where they are, to some extent, the property of both parties, as in the case of an agreement of which there is but one copy; there the party who holds it, is a trustee for the other." A similar limitation had been previously affixed, by the decisions in Blakey *v.* Porter, 1 *Taunt.* 386; Bateman *v.* Phillips, 4 *Taunt.* 157; King *v.* King, *Ibid.* 666; Street *v.* Brown, 6 *Taunt.* 302, (1 *E. C. L. R.* 391); and in Ratcliffe *v.* Bleasby, 3 *Bing.* 148, (11 *E. C. L. R.* 74).

British elementary writers of great repute, have given more

[Murphy v. Morris.]

breadth to the rule on this subject. In *Starkie on Evidence* it is said, "According to the present practice, a judge will, upon summons, order a copy of the instrument on which the action is founded to be delivered to the defendant or his attorney, whenever the action is founded upon a written instrument, whether it be a policy of insurance, a bill of exchange, or special agreement, or undertaking, and whether it be or be not stated in the declaration to be in writing." 2 *vol.* 731. And the same general proposition is laid down by *Tidd*, with the qualification that "a special ground, as that the demand is of long standing, and the defendant has no copy of the instrument, or that there is reason to suspect its being forged, is necessary." 1 *Tidd's Prac.* 639, and *Bagley's Practice* 240, 244.

In *New York* the broad principle asserted by Lord Mansfield in Barry *v.* Alexander, has been adopted after full deliberation. Waller *v.* Murray, 4 *Cowen* 399, *and cases there cited.*

The application before us falls within the narrowest limits of the modern British decisions, so that as far as respect for authority of other courts should influence our determination, there is no difficulty.

The principal objection made by the defendant's counsel is, that by the act of assembly of 16th June, 1836, the powers of a court of chancery "in relation to the discovery of facts material to a just determination of issues and other questions arising or depending" in this court are *expressly* conferred. *Purdon's Dig. 5th edition*, 220–21. And that by the 13th section of the act of 21st March, 1806, *Ibid.* 51, it is declared that "in all cases where a remedy is provided or duly enjoined, or any thing directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, and no penalty shall be inflicted or any thing done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect."

Although for more than twenty years immediately succeeding the passage of this latter act, the section just quoted was held *not* to apply to *civil* actions, yet recent decisions have enlarged the sphere of its operation, and it is now understood to comprehend both civil and criminal proceedings. 1 *Rawle* 290, Wike *v.* Lightner. Does then the act of 1836, provide a *remedy* by which the plaintiff can compass the object which he has in view ?

[Murphy v. Morris.]

We think this question must be answered negatively. This act provides for the discovery of *facts* material to a just determination *of issues,* and other questions arising or depending in this court. Whether the *discovery of facts* is to be construed to embrace the production of papers, it is not necessary now to decide, as it is evident an *issue* must be formed on *some question* depending in a particular suit, before the power conferred by this act can be exercised. The present application is made *anterior* to the filing of the declaration, and with the sole view of enabling the plaintiff to *declare.* No issue has been formed therefore, or could be formed as yet, nor is there any *other question* depending, in relation to which the document described, is desired. The act of assembly, therefore, opposes no obstacle, and no reason having been shown why the paper should not be produced for inspection, the rule is made absolute.

We are aware that the practice of the law courts in England in regard to this subject, has been criticised with a good deal of severity by Lord Eldon in the Princess of Wales *v.* The Earl of Liverpool, 1 *Swanst. Rep.* 119 & 124, but the practice has continued there as before, and the only objection he assigns is, that in courts of equity, where the defendant is compelled to produce a paper, he is permitted to accompany the production with an explanation of all the circumstances attending it, which of course, being part of his answer must on the trial in court be received in evidence with the paper. But this objection is without force in regard to the present application, inasmuch as the purpose for which the inspection is asked, is, to aid the plaintiff in *forming his declaration,* and not with a view to *evidence* on the trial.

Rule absolute.