Parks, Appellant, *v.* McDevitt et al.

Argued October 6, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ. (RENO, J., absent).

*William T. Kelsh,* for appellant.

*William R. Reynolds,* with him *MacCoy, Brittain, Evans & Lewis,* for appellees.

OPINION BY KELLER, P. J., October 29, 1943:

Plaintiff has appealed from a decree sustaining preliminary objections to his bill in equity and dismissing the bill.

The decree must be reversed.

The suit grew out of a written lease for a dwelling house, No. 1508 Lombard Street, Philadelphia, which the defendant Martin, as agent for the owner, leased to the plaintiff for the term of two years from February 15, 1941, at the rental of $12.50 per month.

On July 6, 1942—nearly seven months before the end of the term—the lessor brought proceedings before a magistrate, under the Act of March 31, 1905, P. L. 87, to obtain possession of the premises *at the expiration of the lease,* after giving the thirty days' notice to the tenant required by said act. The proceeding was improper on its face for the Act of 1905 is limited in its title and by its provisions to cases where a tenant shall hold possession of real estate, either by license or lease, for any time less than one year, or by the month, or for an indeterminate time; and the act expressly pro-

vides that it "shall not be construed as authorizing the dispossession of a tenant before the expiration of his ...... lease". The docket of the magistrate showed that the lease in question was for two years from February 15, 1941.

The Act of December 14, 1863, P. L. (1864) 1125, applies to such dispossession proceedings where the lease is for one or more years, but *it* requires *three months'* notice to the tenant by the landlord of his desire to repossess the premises at the determination of the lease, which was not given here. The case is not affected by the fact that the lease authorized the landlord to determine or end the lease prior to its term for non-payment of rent, etc. The provisions of the respective acts still govern. The Act of 1863 relates to cases where the *lease* was for a term of one or more years, and the Act of 1905 is limited, as above stated, to cases where the *lease* was for less than one year.

Nevertheless the magistrate issued his summons and after a hearing, on July 31, 1942 entered judgment in favor of the lessor and against the tenant for $80, and $4 costs. No judgment against the tenant, "that he forthwith give up the possession of the said premises to the said lessor", as prescribed by the Act of 1863, was entered by the magistrate on his docket.

The tenant on August 7, 1942 appealed from the judgment against him for $80 and costs, which appeal was duly filed in the court of common pleas; and he entered good and approved real estate security on appeal in double the amount of the debt, interest and costs.

On September 21, 1942, the magistrate issued a writ of restitution directed to the constable, directing him forthwith to deliver to the lessor (defendant Martin) full possession of the demised premises and levy the sum of $87.50 of the goods and chattels of the tenant (this plaintiff) awarded as damages and costs.

Thereupon the lessee or tenant filed this bill in equity against the magistrate, the constable and the lessor to restrain his unlawful eviction under this writ of restitution or ejectment.

The court below sustained preliminary objections filed to the bill on the ground that the plaintiff had a full, complete and adequate remedy at law by appeal or certiorari.

The court below would have been right if the proceedings before the magistrate had shown that he had entered a judgment ordering the tenant to give up possession of the premises to the lessor; but they show the contrary, that he entered only a money judgment. This plaintiff had duly appealed from that judgment. But the writ of restitution is based on no judgment at all, and the tenant could neither appeal from, nor certiorari to the common pleas, a non-existent judgment. His only course was to proceed in equity to restrain the execution of a writ which was issued without the entry of the judgment necessary to support it.

It is true that a magistrate's court is not a court of record (Const. Art. V, secs. 10 & 12) and his docket of the proceedings before him does not prove itself or import absolute verity; but it has been decided by our Supreme Court that the docket of a justice of the peace or magistrate, *as to things adjudicated by him,* has the conclusiveness of a record: *Hazelett v. Ford,* 10 Watts 101, 103 (GIBSON, C. J.). "It is true that the proceedings of a justice are not technically a record, for the court is not a court of record; but they are in the nature of a record, and being judicial proceedings, they cannot be controverted collaterally, or in a suit grounded on the judgment of the justice." *Clark v. M'Comman,* 7 W. & S. 469, 470. If incorrectly entered on the docket, the remedy is by application to the justice, with notice to the parties, to correct or reform it. See also *Holly v. Travis,* 267 Pa. 136, 140-142, 110 A. 230, re-

versing the judgment of this Court in 71 Pa. Superior Ct. 527.

It follows that if a *judgment* as it appears on the magistrate's docket cannot thus be attacked, a judgment entered on his docket cannot be enlarged so as to embrace something not adjudicated or determined, as shown by that docket. An appeal from the judgment or a certiorari to the magistrate would not cure the defect here complained of. It would affect only the judgment for $80 and costs, which was the only judgment entered by the magistrate on his docket. It was nearly two months later that the writ of restitution was issued, with no judgment to support it. Neither appeal nor certiorari would correct that, for there was no *judgment* authorizing a writ of restitution which could be appealed from or certioraried to the court of common pleas. A bill in equity was the only available remedy to prevent the enforcement of an illegal writ. See *Cochran v. Eldridge,* 49 Pa. 365, 368-371.

If a plaintiff should cause a writ of fieri facias to issue in the court of common pleas before judgment was entered, or a writ of attachment in execution to issue in that court before judgment had been obtained, the court would set aside the writ of execution or quash the attachment in execution on petition and rule to show cause; but this would be done as a *substitute for a bill in equity,* in accordance with the practice adopted by the early judges in Pennsylvania, in the absence of a court of chancery, who held that equity was part of the common law of Pennsylvania and might be administered by common law tribunals, under common law forms (*Myers v. South Bethlehem,* 149 Pa. 85, 89, 24 A. 280). Had equity courts then been established, the remedy would have been by bill in equity to enjoin improper proceedings at law. The convenience of the practice so instituted caused its continuance even after the legislature had conferred on our common pleas courts, the

power and jurisdiction of courts of chancery to administer equitable relief so far as related to certain specified matters, including "the prevention or restraint of the commission ...... of acts contrary to law, and prejudicial to the ...... rights of individuals" (Act of June 16, 1836, P. L. 784, sec. 13, par. 2, cl. V, pp. 789-790).

Such a writ of scire facias or rule to show cause would not issue out of the court of common pleas to a magistrate's court. Hence a bill in equity is and remains the appropriate remedy to prevent the execution of a writ of dispossession, where there is no valid judgment of a magistrate or justice of the peace to support it.

The decree sustaining the preliminary objections to the bill is reversed, and the defendants are required to answer over on the merits within the time fixed by the equity rules. Costs to await the final determination of the suit.