## United States Gypsum Company v. Birdsboro Steel Foundry & Machine Company. No. 2

*Clarence G. Myers* of *Duane, Morris & Heckscher*, for plaintiff.

*Robert T. McCracken*, for defendant.

Sloane, J., December 16, 1943.—This matter comes before us on plaintiff's petition to inspect, in advance of trial, drawings and plans in the exclusive possession of defendant and prepared by defendant in constructing a 9,000-ton hydraulic press for plaintiff for use in manufacturing compressed asbestos sheets.

Plaintiff, in its statement of claim, alleges failure of the parts (original and replacement parts) to do what they were meant to do; it asserts improper design of the press which rendered it unable to withstand the great pressures required. Plaintiff maintains that to prove improper design it must submit defendant's plans to experts, and asks that defendant be required to do so.

This matter was here before. Defendant, in an affidavit of defense raising questions of law, relied upon a clause in the contract which provided a guaranty against defects in materials and workmanship by repair or replacement of those defective parts within three months after starting the press, and not more than one year after shipment. None of the alleged failures occurred within these time limitations. Our brother Oliver gave judgment (opinion filed April 14, 1942) that there was also an implied warranty of fitness for plaintiff's particular purpose, and the question of law was ruled against defendant. It thereupon filed an affidavit of defense denying the press was defective in quality, design, or construction, averring that it was capable of performing and did perform as warranted, and that abuse of the press by plaintiff in improper operation and maintenance was responsible for its alleged breakdowns. Defendant counterclaimed various amounts for replacement parts allegedly not paid for. Plaintiff filed a reply to the counterclaim; the case got to issue.

Defendant has filed an answer to plaintiff's petition, denying the plans are vitally material and pertinent

to the issue, asserting they are the private and exclusive property of defendant, prepared at substantial expense. Defendant emphasizes that its plans and drawings represent accumulated skill and experience, and that their disclosure could be utilized to the economic detriment of defendant, enabling "anyone else to make a machine of the character covered by this contract". Defendant also averred that certain drawings and prints to be turned over to plaintiff under the terms of the contract have been given it, and that these are not the plans requested in the present proceeding.

The petition does not refer to the old Act of February 27, 1798, 3 Sm. L. 303, sec. 1, 28 PS §61. If it be so considered plaintiff is out, for it is now clear that the Act of 1798 contemplates production at trial and not in advance of it.

"Moreover, the Act of 1798 applies only to the production of books and writings *at the trial* and not in advance thereof: *Yorkshire Worsted Mills v. National Transit Co.*, 325 Pa. 427": Whetsel v. Shaw, 343 Pa. 182, 194 (1941).

There are cases which carved exceptions and permitted inspection before trial under the Act of 1798, principally where it is necessary to enable plaintiff to file his declaration, or where the writings form part of the contract and the only copy is in the hands of the adverse party, or there is a common interest which amounts to a common property. See Murphy v. Morris, 2 Miles 60 (1837), Arrott v. Pratt, 2 Wharton 566 (1837), People's Trust Co. v. Pennsylvania Lodge, etc., 25 Dist. R. 774 (1916), Calloway v. Clucas et al., 16 D. & C. 453 (1931), and cases cited. But in view of the Whetsel case I cannot give them support. I might add that it makes no difference with the availability of a bill in equity for discovery of the pertinent facts.

At that, plaintiff's application fails to fall into any of the classes of exceptions, first because it would seem that the exceptions apply to pleadings and their preparation rather than to proofs, though there is dictum in

Lesser v. Henry, 50 Pa. Superior Ct. 440 (1912), against distinction. Plaintiff wishes to use the plans as evidence at the trial of the case rather than to aid it in declaring its cause of action. It has already filed its statement of claim and does not seek to amend it. Then, the drawings and plans used by defendant in constructing the press do not form a part of the contract, according to defendant's answer, and this does not appear to be seriously disputed. Certain more general drawings and prints of the machinery have been turned over to plaintiff by defendant in accord with their contract.

Nor can I find that plaintiff by its petition establishes its right at common law. At common law a notice to produce could be given the adverse party, but this did not extend to compel production, but only to lay the groundwork for the introduction of secondary evidence: Alexander v. Coulter et al., 2 S. & R. 494 (1816); and see Reddelien v. Atkinson, 46 Pa. Superior Ct. 159 (1911).

I might ask whether plaintiff by its petition appeals to us under general equity, but my judgment is that at this date we are limited by the Acts of June 16, 1836, P. L. 784, and April 10, 1848, P. L. 448, for the day is gone when our courts in Pennsylvania can channel into law to get to equity. (See Parks v. McDevitt et al., 153 Pa. Superior Ct. 428, 432 (1943), Rawle on Equity in Pennsylvania, The Law Academy of Philadelphia (1868), Equity in Pennsylvania, Anthony Laussat, Jr. (1825), Reprinted—First Annual Report of Pennsylvania Bar Association, 221 (1895), The Administration of Equity Through Common Law Forms in Pennsylvania, Sidney George Fisher, vol. 2, Select Essays in Anglo-American Legal History, 810).

Broader privileges of inspection or discovery before trial are permitted in other jurisdictions, the Federal for example (see Instruments of Discovery Under Federal Rules of Civil Procedure, 41 Michigan Law Review 205 (1942), Rule 34 of the Rules of Civil Procedure for the District Courts of the United States);

but in our jurisdiction the appropriate way to proceed to obtain information by production of documents or writings before trial is by bill of discovery [1] (Acts of June 16, 1836, P. L. 784, sec. 13, 17 PS §282, and April 10, 1848, P. L. 448, sec. 4, 17 PS §308). And that is the method plaintiff should adopt. "This function of equity has not been usurped by the reforms in law practice under the Act of February 27, 1798, 3 Smith Laws 303, which permits the use of the subpœna duces tecum for the production of records and documents at trial . . .": Yorkshire Worsted Mills v. National Transit Co., 325 Pa. 427, 429 (1937).

If plaintiff says we simply delay the matter by refusing to consider its petition as the equivalent of a bill of discovery, I answer only, with deference and without show of criticism, that plaintiff could as easily have filed a bill in the first place, and it is not good to make precedent out of mistake or inadvertence. The delay is of plaintiff's own making since it could have adopted the proper procedure in the first instance.

But aside from the thought that "the boundaries of actions must be kept up, otherwise confusion would ensue" (Legaux v. Feasor, 1 Yeates 586, 587 (1795), nisi prius), a proceeding by bill of discovery would permit fuller exploration of the materiality of the plans of the

---

[1] A bill in equity for discovery in aid of a law case apparently was by analogy to an Act of 1789 "when proceedings in the nature of a bill of discovery were authorized in the case of foreign attachment . . . by compelling answers on oath to interrogatories in the nature of a bill of discovery", pp. 12, 13, Sixth Report of the Commissioners (Wharton, Rawle and Jones), appointed to revise the Civil Code of Pennsylvania, 1835. Said the eminent commissioners, (p. 20) : "It remains to be considered whether this power ought to be enlarged so as to embrace the whole sphere of litigation; namely, to compel discovery in all cases from parties to a suit, where by the rules of equity, they may be required to answer. We think that there is no substantial reason in the way of our adoption of this practice. . . . The march of justice is often interrupted and sometimes defeated in our courts for want of this important aid; and although there is alleged to be danger of perjury, we think that the experience of the Courts of Equity proves that this is very small."

press to plaintiff's case. Now all we have is an averment of materiality in the petition, denied in defendant's answer, and under the general applicable principle we must accept the averment of defendant's answer as verity (Dime Bank & Trust Co. v. Manganiello, 152 Pa. Superior Ct. 270 (1943)).

Discovery is favored (Liegey, Trustee, v. Clearfield Textile Co., 149 Pa. Superior Ct. 433 (1942)), where that which is to be discovered is important to one's case, and the other party, alone, has it. Materiality is the thing: Sherwood Brothers, Inc., v. Yellow Cab Co., 283 Pa. 488, 491 (1925) ; Moore v. Craven, L. R. 7 Ch. App. 94 (1870) ; and when shown to exist, "the rationale of the remedy . . . is simplicity itself": Sinclair Refining Co. v. Jenkins Petroleum Process Co., 289 U. S. 689, 693 (1933).

But as the matter stands plaintiff must prove failure of the machine itself to perform properly in accordance with the warranty of fitness for the particular purpose of plaintiff, and the designs used by defendant are secondary. If the designs were proper but the machine itself were not constructed in accordance with them and failed, defendant would not be relieved. Faulty or improper designs do not therefore now appear material to plaintiff's case, required to be proved affirmatively by it.

In the present state of the record I do not find basis for the inspection of the drawings and plans sought.

The rule is discharged.